UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEVEN BUSH JR.,

                        Plaintiff,

v.                                                      7:16-CV-1007
                                                        (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEAST NY               VICTORIA M. ESPOSITO, ESQ.
  Counsel for Plaintiff
55 Colvin Avenue
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.                     SUSAN J. REISS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Steven Bush Jr.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 15.) For the

reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and

Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision

denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born in 1982, making him 26 years old at the alleged onset date, 30 years old at the application filing date, and 32 years old at the date of the ALJ's decision.  Plaintiff reported obtaining his GED.  The ALJ found he does not have past relevant work.  Generally, Plaintiff alleges disability due to acid reflux, bipolar disorder, depression, back problems, and anger issues.

### B.     Procedural History

Plaintiff applied for Disability Insurance Benefits on January 29, 2013, and Supplemental Security Income on January 30, 2013, alleging disability beginning October 15, 2008.  Plaintiff's applications were initially denied on June 12, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ John P. Ramos on November 20, 2014.  On December 3, 2014, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 30-43.)[1]  On June 16, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 32-43.)  First, the ALJ found Plaintiff was insured for disability benefits under Title II until December 31, 2010.  (T. 32.)  Second, the ALJ found that Plaintiff has not

---

[1]     The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

engaged in substantial gainful activity since the alleged onset date. (*Id.*) Third, the ALJ found that Plaintiff's bipolar disorder and history of seizure disorder are severe impairments, while his cervical and lumbar spine impairment, acid reflux, migraines, knee impairment, intellectual functioning, and drug and alcohol abuse are not severe impairments. (T. 33-34.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 35-36.) Specifically, the ALJ considered Listings 11.02 (convulsive epilepsy), 11.03 (non-convulsive epilepsy), and 12.04 (affective disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels, but should avoid working at unprotected heights; climbing ladders, ropes, or scaffolds; and working in close proximity to dangerous machinery or moving mechanical parts of equipment. He retains the ability to understand and follow simple instructions and directions; perform simple tasks and occasionally more complex tasks with intermittent supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with other coworkers to the extent necessary to carry out simple tasks; complete simple tasks without need for frequent supervision; handle reasonable levels of simple work-related stress in that he can make decisions directly related to the completion of simple and occasionally more complex tasks and handle usual work place occurrences and interactions associated with unskilled and semiskilled work.

(T. 37.) Sixth, the ALJ found that Plaintiff does not have past relevant work. (T. 42.) Seventh, and finally, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy pursuant to the Medical-Vocational Guidelines because his non-exertional limitations would not significantly erode the occupational base for unskilled work at all exertional levels. (T. 42-43.) The ALJ therefore concluded that Plaintiff is not disabled.

**D.     The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the RFC finding is not supported by substantial evidence. (Dkt. No. 10, at 19-21 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that the ALJ erred in relying on two opinions that pre-dated a worsening in Plaintiff's physical and mental conditions. (Dkt. No. 10, at 19-20 [Pl. Mem. of Law].)  Plaintiff argues that these stale opinions are inconsistent with the other opinion evidence in the record. (Dkt. No. 10, at 19-21 [Pl. Mem. of Law].)  Plaintiff argues that, in terms of the conflicting opinions, the ALJ either improperly rejected or failed to reconcile affording significant weight to them while declining to adopt the extent of the opined limitations. (Dkt. No. 10, at 20-21 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ should have afforded controlling weight to the opinion from treating psychiatrist Nedim Hukovic, Ph.D., which would result in a finding of disability pursuant to Listing 12.04. (Dkt. No. 10, at 21-22 [Pl. Mem. of Law].)

Third, Plaintiff argues that the ALJ erred in failing to obtain testimony from a vocational expert at Step Five. (Dkt. No. 10, at 22-23 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that the inclusion in the RFC of non-exertional limitations for avoiding heights, climbing, and working around machinery or moving parts, as well as the mental restrictions, triggered the ALJ's duty to consult a vocational expert rather than rely on the Medical-Vocational Guidelines. (Dkt. No. 10, at 23 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the credibility finding is not supported by substantial evidence because the ALJ misinterpreted Plaintiff's reported daily activities and erred in using them as evidence that Plaintiff was not as limited as alleged. (Dkt. No. 10, at 23-24 [Pl. Mem. of Law].)

Fifth, and last, Plaintiff argues that the ALJ erred in failing to find his back impairment to be a severe impairment, or, alternatively, that the ALJ erred in failing to consider the effects of this impairment on Plaintiff's functioning whether or not it was severe.  (Dkt. No. 10, at 25 [Pl. Mem. of Law].)

Generally, Defendant makes four arguments in support of her motion for judgment on the pleadings.  First, in response to Plaintiff's first and fourth arguments, Defendant argues that the RFC finding was supported by substantial evidence.  (Dkt. No. 15, at 5-17 [Def. Mem. of Law].)  More specifically, Defendant argues that, when assessing Plaintiff's physical functioning, the ALJ properly relied on the opinions from treating physician John Carthy, M.D., and physician assistant ("PA") Ashley Ryan, asserting that more recent treatment evidence would not have altered these sources' opinions.  (Dkt. No. 15, at 5-9 [Def. Mem. of Law].)  Defendant further argues that the ALJ properly relied on Plaintiff's daily activities that were inconsistent with his allegations, and properly explained why he chose not to adopt all of the limitations opined by the physical consultative examiner.  (Dkt. No. 15, at 10-12 [Def. Mem. of Law].)  In terms of the mental RFC, Defendant argues that the ALJ properly relied on the opinions from Dr. Carthy and PA Ryan because more recent evidence does not show that consideration of such evidence would have altered their opinions.  (Dkt. No. 15, at 12-14 [Def. Mem. of Law].)  Defendant further argues that the ALJ properly accounted for the limitations in the opinion from the mental consultative examiner and further properly cited Plaintiff's reported daily activities and the opinion of the non-examining State Agency psychologist as support for his findings.  (Dkt. No. 15, at 14-17 [Def. Mem. of Law].)

Second, in response to Plaintiff's second argument, Defendant argues that the ALJ properly afforded less weight to the opinion from Dr. Hukovic because it was contradicted by the

other evidence in the record. (Dkt. No. 15, at 17-18 [Def. Mem. of Law].) Defendant further argues that the ALJ was not required to afford special deference to Dr. Hukovic's opinion that Plaintiff met Listing 12.04, and that this opinion was nonetheless not supported by the evidence. (Dkt. No. 15, at 18-19 [Def. Mem. of Law].)

Third, in response to Plaintiff's third argument, Defendant argues that the ALJ properly relied on the Medical-Vocational Guidelines at Step Five because there was no evidence that the non-exertional limitations would impose a significant effect on Plaintiff's ability to perform the occupational base of unskilled work at all exertional levels. (Dkt. No. 15, at 20-21 [Def. Mem. of Law].)

Fourth, in response to Plaintiff's fifth argument, Defendant argues that the ALJ's finding that Plaintiff's back impairment was non-severe is supported by substantial evidence. (Dkt. No. 15, at 9-10 [Def. Mem. of Law].)

## II.      RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615

F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

### A.   Whether the ALJ's Findings Related to Plaintiff's Back Impairment Are Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 9-11 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

At Step Two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include

walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, No. 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims' [], the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, No. 7:05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has also indicated that the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), report and recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

Plaintiff argues that, in finding his back impairment non-severe and failing to consider this impairment when assessing his functional limitations, the ALJ ignored imaging of Plaintiff's cervical spine and the opinion from consultative examiner Justine Magurno, M.D. (Dkt. No. 10, at 25 [Pl. Mem. of Law].) However, as Defendant notes in her memorandum, the medical and other evidence supports the ALJ's findings. (Dkt. No. 15, at 9-11 [Def. Mem. of Law].)

Plaintiff's argument that the ALJ ignored spinal imaging studies is clearly contradicted by the decision. When explaining why he found Plaintiff's cervical and lumbar spine impairments to be non-severe, the ALJ cited to a December 2012 lumbar spine x-ray that showed no acute disease, a December 2013 CT scan of the lumbar spine that showed a chronic L5 endplate deficit but no acute disease, and imaging of Plaintiff's cervical spine from December 2013 that showed only mild degenerative changes, mild disc bulging and protrusion, and mild central canal stenosis. (T. 33.) Although the ALJ did not explicitly discuss an additional imaging study of the thoracic spine from December 17, 2013, that study showed only mild degenerative changes similar to the other studies. (T. 599.) It is therefore clear that, contrary to Plaintiff's argument, the ALJ properly considered the objective imaging of Plaintiff's spine when making his determination.

The ALJ also indicated other medical evidence that supported his finding, such as noting that examinations revealed minimal positive clinical findings with no evidence of positive neurological findings, decreased range of motion, or weakness. (T. 33.) This assertion, while general, is supported by the record. It appears that Plaintiff had not sought treatment for back pain until January 2013, when he reported low back pain, spasms, and a transient numbness in his body after shoveling snow. (T. 351.) He was noted to be in no acute distress and the physical examination did not reveal musculoskeletal abnormalities. (*Id.*) At a mental health

appointment on February 4, 2013, he was noted to guard his back when sitting down and to change positions slowly. (T. 342.) On February 27, 2013, he was observed to have tenderness over the left paraspinal area and left lumbosacral joint, and he was instructed to continue Mobic for pain relief. (T. 350.) He did not seek any treatment for physical issues again until December 17, 2013, when he reported suffering a fall and temporary paralysis after a seizure episode. (T. 590.) He was observed to have minimally decreased strength in the lower extremities, subjective sensory loss, and tenderness in the cervical and lumbar spine but there was no evidence of a cervical spinal injury and he was noted to ambulate without assistance. (T. 591, 594, 597.) He reported low back pain at a mental health examination on September 10, 2014, but indicated he had not yet scheduled an appointment for physical therapy. (T. 622.) Based on the lack of treatment and the fact that there are minimal objective findings that would suggest a significant impairment in Plaintiff's functioning, the ALJ's conclusion that the medical evidence did not show a severe spinal impairment is supported by substantial evidence.

Additionally, as the ALJ noted throughout the decision, the record contains numerous references to Plaintiff's activities that are inconsistent of his allegations of a severe spinal impairment. (T. 37-39.) Among the activities the ALJ highlighted were repairing cars in 2009, doing manual labor at his home, carrying wood, working as a landscaper, hauling trash, raking the lawn, and using a sledgehammer to change a tire on his vehicle in 2010, working on a car and using a hammer in 2011, doing various jobs such as landscaping in 2012, shoveling snow, driving, bicycling, camping and fishing in 2013, and working on his driveway and around his house and garage, riding an all-terrain vehicle, rescuing two dogs and winterizing his home, and using a push mower in 2014. (*Id.*) Substantial evidence therefore supports the ALJ's assertion

that Plaintiff's activities throughout the period showed his spinal impairment did not impose significant work-related limitations.

Plaintiff's argument that the ALJ ignored Dr. Magurno's opinion is also contradicted by the decision. The ALJ discussed Dr. Magurno's examination findings and opinion, but afforded her opinion minimal weight, finding it appeared to be based in part on Plaintiff's subjective allegations of chronic pain and was inconsistent with the other opinions in the record and Plaintiff's documented activities. (T. 39.) The ALJ also noted that Plaintiff's presentation at the examination with Dr. Magurno was inconsistent with his presentation to treatment providers, which had typically shown less significant symptoms. (*Id.*) Therefore, contrary to Plaintiff's argument, the ALJ did not ignore Dr. Magurno's opinion, but rather explicitly indicated that it was not entitled to any significant weight for multiple enumerated reasons. Because the ALJ properly explained his rationale for declining to rely on Dr. Magurno's opinion, it does not serve as evidence to undermine the ALJ's finding that Plaintiff's back impairment was not severe.

Based on the above, substantial evidence supports the ALJ's finding that Plaintiff's back impairment was not a severe impairment. Additionally, even if that finding was in error, it would be harmless because the decision makes clear that the ALJ continued through the sequential evaluation and appropriately considered the evidence related to Plaintiff's back impairment throughout that evaluation. *Fuimo*, 948 F. Supp. 2d at 269-70. Remand is not merited on this basis.

**B.** **Whether the Weight Afforded to the Opinion Evidence is Supported By Substantial Evidence and Consistent with Applicable Legal Standards**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 5-19 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure

to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

Plaintiff argues broadly that the RFC finding is not supported by substantial evidence based on the ALJ's erroneous reliance on opinions from treating physician Dr. Carthy and PA Ryan, and his erroneous rejection of other contrary opinions, particularly that from treating psychiatrist Dr. Hukovic. (Dkt. No. 10, at 19-22 [Pl. Mem. of Law].)

Dr. Carthy provided multiple opinions between April 2009 and March 2011, all of which indicated there was no evidence of limitations in Plaintiff's ability to walk, stand, sit, see, hear, speak, and climb. (T. 368, 375, 400, 406, 413.) In the opinion from December 15, 2009, Dr. Carthy additionally opined that Plaintiff was very limited (defined as able to perform for one to two hours per day) in his ability to lift, carry, push, pull, bend, and use his hands as a result of a contemporaneous and temporary shoulder sprain. (T. 399-400.) The ALJ afforded great weight to these physical functional opinions, noting Dr. Carthy's treating relationship and finding they were consistent with the evidence in the record. (T. 38.) Some of these opinions also noted that there was no evidence of limitations in Plaintiff's ability to perform mental demands such as remembering, understanding and carrying out instructions, making simple decisions, interacting appropriately, maintaining socially appropriate behavior, maintaining basic standards of hygiene and grooming, and functioning in a work setting at a consistent pace. (T. 268, 375, 400.) The

ALJ afforded significant weight to these mental opinions, noting Dr. Carthy's treating relationship and finding they were consistent with the evidence in the record.  (T. 40.)

On June 22, 2010, PA Ryan opined that there was no evidence of limitations in any physical or mental abilities.  (T. 387.)  The ALJ afforded her physical opinion great weight and her mental opinion significant weight because they were consistent with the evidence of record and Dr. Carthy's opinion.  (T. 38, 40.)

In terms of Plaintiff's physical functioning, Plaintiff argues that the ALJ erred in relying on the "stale" opinions from Dr. Carthy and PA Ryan over Dr. Magurno's opinion because more recent treatment evidence showed increased seizure activity and a back injury that those remote sources had not considered.  (Dkt. No. 10, at 19-20 [Pl. Mem. of Law].)  However, as already discussed in relation to the severity of Plaintiff's back impairment, the ALJ provided sufficient reasons supported by substantial evidence for affording minimal weight to Dr. Magurno's opinion.  *See Dailey v. Comm'r of Soc. Sec.*, No. 5:14-CV-1518, 2016 WL 922261, at *5 (N.D.N.Y. Feb. 18, 2016) (noting that "[a]n ALJ may provide less weight to a treating source's opinion if that opinion is based on plaintiff's subjective complaints and not on objective medical evidence") (citations omitted); *see also Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007)).  Additionally, as Defendant notes, there is nothing in the physical treatment evidence from after early 2011 that would render the conclusions of Dr. Carthy and PA Ryan invalid or stale.  Based on the evidence previously discussed in section III.A. and the other treatment evidence showing only sporadic

complaints of knee and shoulder pain, the ALJ's decision to rely on the opinions of Dr. Carthy and PA Ryan related to Plaintiff's physical functioning is supported by substantial evidence.[2]

In terms of Plaintiff's mental functioning, the ALJ not only relied on the opinions from Dr. Carthy and PA Ryan as noted above, but also afforded significant weight to the opinions from consultative examiner Dennis Noia, Ph.D., and State Agency psychological consultant H. Ferrin. (T. 40-41.) On June 6, 2013, after conducting an examination that showed good grooming and hygiene, normal posture, lethargic motor behavior, appropriate eye contact, fluent but monotonous speech, adequate language, flat affect, neutral mood, intact attention and concentration, mild-to-moderately impaired memory, and estimated borderline intellectual functioning, Dr. Noia opined that Plaintiff had no limitations in understanding and following simple instructions and directions, performing simple tasks, and performing some complex tasks; mild limitations maintaining attention and concentration for tasks, attending a routine, maintaining a schedule, learning new tasks, and making appropriate decisions; moderate-to-

---

[2]        There is also a May 7, 2010, opinion from Alecia Van Wagner, D.O., though there is no indication that the ALJ discussed or weighed this opinion in the decision. (T. 388-89.) Dr. Van Wagner opined that there was no evidence of limitations in any physical or mental ability other than a limitation to climbing for one to two hours per day and no driving or operating equipment. (T. 389.) In the RFC, the ALJ found that Plaintiff should avoid climbing ladders, ropes and scaffolds and working in proximity to dangerous machinery or moving mechanical parts of equipment. (T. 37.) Consequently, although the ALJ did not explicitly consider this opinion, he did reasonably account for the limitations it opines in the RFC, a fact which renders any error in failing to explicitly discuss it harmless. *See Blabac v. Comm'r of Soc. Sec.*, No. 3:08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose). .

marked limitations in dealing with stress; and was able to relate to and interact moderately well with others.  (T. 472.)

On June 11, 2013, Dr. Ferrin found moderate limitations in Plaintiff's abilities to understand, remember and carry out detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, complete a normal workday or workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (T. 123-24.)  Dr. Ferrin opined that, overall, Plaintiff was able to understand and remember instructions, sustain attention and concentration for tasks, engage in routine interactions with co-workers and supervisors, and cope with basic changes and make routine decisions.  (T. 125.)

Plaintiff argues that the ALJ erred in failing to reconcile affording significant weight to Dr. Noia's opinion with declining to incorporate all of his opined limitations into the RFC.  (Dkt. No. 10, at 21 [Pl. Mem. of Law].)  However, Plaintiff's argument on this issue is unavailing for multiple reasons.  First, the ALJ is not required to adopt the totality of any opinion, but rather must make a finding based on the evidence in the record as a whole.  *See Kitka v. Comm'r of Soc. Sec.*, No. 5:15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) ("There is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner.") (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013)).  Second, Plaintiff fails to elucidate how the RFC fails to account for Dr. Noia's opinion.  The only limitation that Dr. Noia rated as more than mild was the moderate-to-marked limitation in the ability to deal with stress, and the ALJ appears to have reasonably accounted for this limitation by limiting Plaintiff to semi-skilled work with the ability to handle "simple work-related stress."  (T. 37, 472.)  Plaintiff does not

17

provide persuasive evidence as to why the ALJ should have interpreted the moderate-to-marked limitation in a more limiting manner. In any event, where evidence is subject to more than one reasonable interpretation, this Court is bound to uphold the ALJ's interpretation. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld."). Because it appears the ALJ reasonably accounted for Dr. Noia's opinion, he did not fail to reconcile an inconsistency in his rationale. Additionally, Plaintiff's argument that the ALJ failed to reconcile also affording significant weight to Dr. Ferrin's opinion despite Dr. Ferrin discounting parts of Dr. Noia's opinion is likewise unpersuasive, as the ALJ nonetheless included greater limitations than outlined in Dr. Ferrin's opinion. There was no harmful error in the ALJ's decision to afford significant weight to either of these opinions.

Relatedly, there was no error in the ALJ's reliance on the opinions from Dr. Carthy and PA Ryan related to Plaintiff's mental functioning despite their being rendered in the earlier portion of the relevant period because it is clear that the ALJ accounted for any worsening present in the later treatment notes by including significant mental limitations in the RFC. Since it is the ALJ's duty to make a determination based on all the evidence rather than discrete opinions, there was no error in the ALJ's decision to partially rely on these opinions while finding greater mental limitations were warranted.

Plaintiff lastly argues that the ALJ erred in failing to afford controlling weight to the opinions from treating psychiatrist Dr. Hukovic, citing to selected evidence that he asserts

supports Dr. Hukovic's conclusions. (Dkt. No. 10, at 21-22 [Pl. Mem. of Law].) However, Plaintiff's conclusory assertions that Dr. Hukovic's opinions, including his opinion that Plaintiff met the criteria of Listing 12.04, were consistent with the evidence are in fact themselves not consistent with the evidence.

On August 1, 2014, Dr. Hukovic opined Plaintiff had an extreme limitation in his ability to respond appropriately to pressures in a usual work setting, marked limitations in his abilities to understand, remember and carry out detailed instructions, interact appropriately with the public, supervisors and co-workers and respond appropriately to changes in a routine work setting, and moderate limitations in his abilities to understand, remember and carry out simple instructions and make judgments on simple work-related decisions. (T. 573-74.) Dr. Hukovic also completed a form in which he indicated Plaintiff displayed symptoms of depressive and manic syndrome along with marked limitations related to social functioning, concentration and task performance, and adapting to the workplace. (T. 578-80.) The ALJ afforded limited weight to Dr. Hukovic's opinions, finding they were inconsistent with clinical findings, Plaintiff's reported activities, and the other opinions. (T. 41.)

The ALJ provided sufficient good reasons for declining to afford controlling weight to Dr. Hukovic's opinion because the evidence as a whole does not support the extent of limitations he opined. *See Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Although the treatment evidence does show Plaintiff experienced mental limitations as a result of his impairment, it does not establish the severity Dr. Hukovic opined or that Plaintiff reported. Notably, although Plaintiff was observed to have depressed or irritable

mood on many occasions, he was routinely observed to have a fairly normal thought process, preserved ability to focus, preserved memory, and the ability to answer questions in a relevant and goal-directed manner.  (T. 342, 346, 481-82, 488-89, 493, 496, 498, 500, 507, 511, 514-16, 518-20, 523, 526, 528, 536, 540, 552, 560, 567, 571, 610, 616, 625, 630.)  Additionally, specific notations and the record as a whole show that Plaintiff's symptoms improved to an appreciable extent with medication compliance and participation in anger management groups where he learned coping strategies that he was able to apply successfully to his life.  (T. 363, 498-99, 513, 529, 538, 542, 545, 547, 614, 616.)

Nor do Plaintiff's daily activities suggest he was as limited as Dr. Hukovic opined.  The mental health treatment notes are filled with reports that Plaintiff was engaged in activities such as housework, making artwork, caring for a duck and two dogs, seeking custody of his son, and engaging in meaningful relationships including a marriage that he ended voluntarily because he believed he had cheated on his wife.  (T. 540, 542, 545, 558, 565, 624, 629.)  Contrary to his testimony that he did not deal well with people and did not handle group therapy well, the evidence also shows that Plaintiff participated well in group and even reported enjoying it because it got him out of the house and around people he could relate to.  (T. 486, 513, 543, 614.)  Plaintiff indicated in a written function report that he had been able to care for his son during the summer, occasionally took care of his mother's dog, performed self-care, baked from scratch, prepared meals daily, mowed the lawn, did laundry, occasionally gardened, cleaned in the house, went outside whenever the weather permitted, walked, drove, and rode a bicycle to go places alone, shopped once per month, paid his own bills, drew daily, and occasionally worked on small engines. (T. 284-87.)   These activities are not consistent with the significant level of mental restriction Dr. Hukovic opined.

Lastly, as already detailed, the other opinion evidence all indicated mental limitations of a far lesser severity than Dr. Hukovic's opinions. This lack of consistency with the evidence from the other treating, examining, and non-examining sources further supports the ALJ's decision to afford less weight to Dr. Hukovic's opinion. Because the reasons the ALJ identified are supported by substantial evidence, the ALJ did not err in declining to afford controlling weight to Dr. Hukovic's opinion. *See Greek*, 802 F.3d at 375.

For all the above reasons, the ALJ's findings related to the opinion evidence are supported by substantial evidence. Further, the evidence as a whole provides substantial support for the RFC finding. Remand is not warranted on this basis.

**C.  Whether the Credibility Finding is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the following reasons.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"

*Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705

F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588,

591 (2d Cir. 1984)).  Due to the fact that the ALJ has the benefit of directly observing a

claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is

generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012)

(citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

      Plaintiff argues that the ALJ's use of his reported daily activities as a basis for

undermining the credibility of his allegations was erroneous because the evidence did not show

that Plaintiff engaged in those activities for sustained periods that would be comparable to

holding a job.  (Dkt. No. 10, at 23-24 [Pl. Mem. of Law].)  However, as already noted in the

preceding sections of this Decision and Order, Plaintiff reported and demonstrated the ability to

perform significant activities that are inconsistent with his reports of disabling anger issues and

concentration deficits in particular.  The issue is not whether the ALJ was able to point to

evidence that showed Plaintiff remained capable of working at the level of the RFC, but rather

whether Plaintiff's reported activities were inconsistent with his other allegations.  *See Morris v.

Comm'r of Soc. Sec.,* No. 12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014)

("The issue is not whether Plaintiff's limited ability to undertake normal daily activities

demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted

Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other

evidence.").  Consequently, those inconsistencies between Plaintiff's activities of daily living

and the extent of his allegations were a proper consideration when assessing credibility.

      In addition to Plaintiff's daily activities, the ALJ also cited factors such as notations of

non-compliance with seizure medication, improvement in mental symptoms with medication and

treatment, and inconsistencies between his allegations and the medical treatment evidence and opinions. (T. 39-41.) These are all proper considerations for assessing credibility, and Plaintiff does not challenge that the ALJ's rationale related to these provided reasons is supported by the evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p, 1996 WL 374186 (July 2, 1996)[3]; *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 271 (N.D.N.Y. 2009). As this Court finds these reasons to be a reasonable interpretation of the evidence, it must defer to the ALJ's credibility assessment. The ALJ provided multiple reasons in support of his finding that Plaintiff's allegations were not entirely credible. Consequently, the credibility finding is consistent with the applicable legal standards and supported by substantial evidence. Remand is not merited on this basis.

### D. Whether the Findings at Step Five are Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 20-21 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala v.*

---

[3]      SSR 96-7p was more recently superseded by SSR 16-3p, but that new provision has an effective date of March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). Since the ALJ's decision was rendered on December 3, 2014, SSR 96-7p was the rule in place at the time of that determination and is therefore the ruling applicable to this review.

*Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).  "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603).  "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

Plaintiff argues that the ALJ was required to consult a vocational expert because it was unclear how the non-exertional postural, environmental, and mental limitations included in the RFC would impact the occupational base of unskilled work at all exertional levels.  (Dkt. No. 10, at 23 [Pl. Mem. of Law].)  However, Defendant is correct that the ALJ provided sufficient explanation as to how he determined these specific limitations would not have a significant impact on the occupational base.  (Dkt. No. 15, at 20-21 [Def. Mem. of Law].)  In particular, the ALJ noted that SSR 96-6p indicated that unskilled sedentary work did not usually require working in high exposed places or with moving mechanical parts or machinery, that SSR 83-14 indicated that an inability to climb ladders or scaffolding would not be significant at any exertional level, and that SSR 85-15 indicated that Plaintiff's RFC would allow him to perform the basic mental demands of unskilled work.  (T. 42-43.)  Because these Social Security Rulings provided sufficient guidance for the ALJ to determine whether the occupational base would be significantly eroded by the non-exertional limitations, the Step Five finding is supported by substantial evidence and there was no legal requirement for the ALJ to consult a vocational expert.  Remand is not merited on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 13, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge